**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------

R.R. and D.R. o/b/o M.R.,

                              Plaintiffs,

        --against--

SCARSDALE UNION FREE SCHOOL DISTRICT,

                              Defendant.

**COMPLAINT**

**08 CV 0247**

---------------------------------------------------------------

      Plaintiffs R.R. and D.R., on behalf of M.R., by their attorneys, Mayerson & Associates, as and for their Complaint against defendant, the Scarsdale Union Free School District, allege and state the following:

    1. Plaintiff M.R. is a student classified by defendant as learning disabled who resides within the Scarsdale Union Free School District and is entitled to all rights, entitlements, and procedural safeguards mandated by applicable law and statutes including, but not limited to the Individuals with Disabilities Education Improvement Act (hereinafter "IDEIA"), 20 U.S.C. § 1400 *et. seq.*, and the pertinent implementing regulations promulgated under the Code of Federal Regulations, as well as the New York State Education Law and its implementing regulations.

    2. Plaintiffs R.R. and D.R. are M.R.'s parents and are residents of the State of New York, residing with M.R. at an address within the Scarsdale Union Free School District (hereinafter "the District").

    3. Although well known to defendant, plaintiffs are not expressly named herein by their given names, nor further identified by their actual address within New York, because of the privacy guarantees provided in the IDEIA statute, as well as in the Family Educational Rights Privacy Act, 20 U.S.C. 1232(g) and 34 C.F.R. 99 (hereinafter "FERPA").

4. The District is a "local educational agency" and school district. Both procedurally and substantively, the District was and still is statutorily obligated under the IDEIA, as well as the laws of the State of New York, to provide M.R. with a "free and appropriate public education."

5. Pursuant to the IDEIA statute (20 U.S.C. § 1415), this Court has jurisdiction over this action without regard to the amount in controversy.

6. Venue is proper in that plaintiffs and the defendant reside in or are situated in this District.

7. The underlying administrative "due process" proceeding was brought by plaintiffs pursuant to the IDEIA to secure declaratory and tuition reimbursement relief pertaining to M.R.'s unilateral placement at the Windward School during the 2005-2006 and 2006-2007 school years upon proper notice duly given by plaintiffs.

8. It was undisputed below that the Windward School is an established and well-known school that has a fine reputation for educating children (like M.R.) who have been classified as being "learning disabled."

9. The evidence at the hearing established that approximately 50 or more students residing within the Scarsdale school district attend the Windward School. Upon information and belief, there is no school district in the State of New York that "feeds" more students to the Windward School than the Scarsdale school district.

10. Upon information and belief, Scarsdale's Superintendent, Michael McGill, is extremely supportive of the Windward School, currently serving on its Board of Trustees. Although defendant, at the hearing, resisted any finding that the Windward School is an "appropriate" educational placement and program for M.R., defendant apparently is now "partnering" with the Windward School to develop additional in-district programs.

11. M.R.'s August 9, 2006 (amended) request for an impartial hearing (annexed hereto as Exhibit A) detailed numerous procedural and substantive violations that, on an aggregate basis, deprived M.R. of a FAPE.

12. The District selected and compensated Jerome Schad, Esq. as the Impartial Hearing Officer ("IHO") to preside over M.R.'s impartial hearing from a rotational list maintained by the District for that purpose. IHO Schad, for many years, was the head of his law firm's special education section, representing the interests of numerous school districts. If anything, Schad's prior experience and statements attributable to him by his local newspaper made him out to be an individual aligned with school districts.

13. During a week-long trial, the evidence established that:

- ✓ M.R. was not making overall good and meaningful progress in Scarsdale's program, which for years involved Scarsdale largely regurgitating and repeating stale and otherwise inappropriate IEP goals and objectives that, for the most part, were not objectively measurable. Scarsdale allowed this situation to continue and failed to take appropriate remedial steps. (P-4, P-20, P-45, D-13, D-28, D-44; Tr. pp. 28-30, 35, 143-46, 154, 430, 678, 898, 953, 1581, 1678, 1663)

- ✓ Basic files and educational records that should have been retained and disclosed by Scarsdale were either destroyed or could not be located. (Tr. pp. 816, 900, 756). Scarsdale's witnesses also provided conflicting and unreliable testimony on the Prong I issue.

- ✓ Scarsdale's IEP misstates that M.R.'s parents "expressed" their agreement with Scarsdale's IEP recommendations. (Tr. pp. 1654, 1664-65).

- ✓ Scarsdale provided inadequate classroom support. (*See, e.g.,* Tr. pp. 794, 796, 1053-54, 1397).

- ✓ The placements and programming recommended by Scarsdale in its IEPs were inappropriate for M.R. and were not reasonably "calculated" to confer a meaningful educational benefit for M.R., as required by law. (P-16, P-18, P-19; Tr. pp. 18-19, 51, 52, 64-65, 70, 106, 125, 182, 185, 233, 403, 549, 837-839, 1068, 1099-1100, 1245, 1255, 1257-58, 1555, 1535, 1681-82, 1763, 1766-1770, 1775)

- ✓ There was inadequate testing and assessment of M.R.'s "present levels" of performance. (*See, e.g.,* Tr. pp. 903, 1314-1316).

- ✓ The IEP team was not duly constituted with the requisite attendees and there were a variety of IEP development failures. (*See, e.g.,* D-29, Tr. pp. 58-59, 263-66, 267, 1055-1056, 1074, 1101-1397).

- ✓ Scarsdale staff mistreated M.R., eroding her confidence and self-esteem. (P-20; Tr. pp. 1042, 1045, 1117).

- ✓ Scarsdale personnel caused M.R. to *deteriorate* in her performance by inducing her parents to terminate outside tutoring support that M.R.'s parents were paying for privately, and which M.R. needed while she was still in the Scarsdale program. (Tr. pp. 1028-29).

- ✓ Scarsdale failed to provide basic LRE-related accommodations. (Tr. pp. 927, 1053-54, 1555).

- ✓ Scarsdale engaged in "shoehorning" and impermissible "predetermination" (Tr. pp. 215-216, 225, 1055, 1056, 1083-84, 919, P-20, 1049-1050, 1106, 1074, 1397, 1245, 1766-1770, 1737, 1768, 837-839)

14. There was ample, if not abundant evidence at the hearing to the effect that the Windward School was and is an "appropriate" placement and program for prong II purposes, in that it was and still is "reasonably calculated" to provide appropriate services for a child such as M.R. who is classified as "learning disabled."

15. On or about May 3, 2007, the IHO Schad rendered a detailed and comprehensive 51-page decision in which he made numerous findings of fact, and drew legal conclusions based upon such findings.  IHO Schad's fact-findings are entitled to due deference by this Court and the SRO, who never saw any of the witnesses testifying, should not have reassessed the credibility of any of the witnesses whose testimony was assessed by the IHO.  *See* <u>M.V. v. Shenendehowa Central School District</u>, 2008 U.S. Dist. LEXIS 182 (N.D.N.Y. 2008).

16. As to plaintiffs' tuition reimbursement claim for the 2005-2006 school year, IHO Schad concluded that: (a) the District had *failed* to provide M.R. with a FAPE (Prong I); (b) M.R.'s private placement at the Windward School was *appropriate* and thus reimbursable (Prong II); and (c) there were *no* compelling "equitable considerations" that would warrant preclusion or

diminishment of plaintiffs' reimbursement award (Prong III). IHO Schad thus held for M.R. 100% on her 2005-2006 school year claim.

17. As to plaintiffs' tuition reimbursement claim for the 2006-2007 school year, IHO Schad similarly concluded that the District had *failed* to provide M.R. with a FAPE (Prong I) and that the Windward School was appropriate and reimbursable under the applicable legal standards (Prong II). However, as to Prong III of the applicable test for reimbursement, the IHO made certain fact findings, and upon such findings, drew the legal conclusion (erroneously, plaintiffs contend) that "equitable considerations" precluded plaintiffs' 2006-2007 tuition claim in its entirety. *See* M.V. v. Shenendehowa Central School District, 2008 U.S. Dist. LEXIS 182 (N.D.N.Y. 2008).

18. In June 2007, plaintiffs initiated a limited appeal from the IHO's May 3, 2007 Decision, so as to challenge the IHO's conclusion of law (on Prong III) that "equitable considerations" barred plaintiffs' 2006-2007 tuition claim in its entirety. Defendant, on the other hand, cross-appealed to the State Review Officer so as to appeal from everything but the IHO's conclusion of law based on "equitable considerations."

19. On appeal to the SRO, just as in this action, the SRO was required to give due deference to the fact findings of the IHO. The SRO did not conduct a single hearing, and his function is limited to a documentary review of the record and the IHO's Decision.

20. On or about July 24, 2007, in the heat of the papers being filed with the SRO on the respective cross-appeals, a disturbing article (annexed hereto as Exhibit B) appeared on the front page of the Wall Street Journal entitled "Schools Beat Back Demands for Special Education Services – Parents Face Long Odds Amid Cost Concerns."

21. The Wall Street Journal article questioned why so many SRO appeals in New York (approximately 73%) are decided in favor of the school district. The article addresses serious concerns about the impartiality and integrity of the SRO, and an appearance of impropriety and compromise of independence that now exists due to the fact that the SRO apparently is living with a senior attorney who is Assistant Counsel to the New York State Education Department and thus, counsel to its Commissioner.[1]

22. Aside from the SRO's living arrangements, upon information and belief, as reported by the Wall Street Journal, former staff members employed by the Office of State Review apparently have charged that when lawyers working for the SRO prepared decisions in favor of parents, the SRO "often" overruled them.[2]

23. On August 23, 2007, plaintiffs, through their counsel, filed a Reply with the SRO in which plaintiffs asked the SRO to recuse himself, based on the disturbing allegations set forth in the Wall Street Journal's investigative reporting. Had plaintiffs or their counsel been aware of the allegations reported in the Wall Street Journal's July 24, 2007 article before such time as the appeal papers were filed with the SRO, plaintiffs would have sought the SRO's recusal earlier.

24. The SRO never even addressed, much less decided, plaintiffs' application that the SRO recuse himself by reason of the allegations set forth in the Wall Street Journal's investigative reporting. Ironically, just as the SRO had done to the family profiled in the Wall Street Journal article (after *they* had won their case at the IHO level), the SRO took away all of the reimbursement relief that IHO Schad had ordered for M.R.'s family, for the 2005-2006 school

---

[1] Upon information and belief, the SRO's office and decision-making authority was created in 1990, after a federal court ruled that it was an impermissible conflict of interest for the State Education Commissioner to be adjudicating appeals from IHO decisions. Now the SRO is cohabitating with a senior attorney who is employed by the State Education Department.

[2] Moreover, historically, SRO decisions used to be generated from a number of individuals. Now, however, all such SRO power is concentrated into the hands of a single individual, Paul Kelly.

year. The SRO did so primarily based on his conclusion that the District had not done anything wrong and had provided M.R. a FAPE. The SRO then reversed the IHO as to his Prong I and Prong II findings in favor of plaintiffs for the 2006-2007 school year claims.

25. Although the SRO stripped plaintiffs of all the relief that the IHO had awarded, the SRO never responded on the merits as to the recusal motion, and he never responded to, much less denied, the allegations set forth in the Wall Street Journal article.

26. On the merits, and wholly apart from the recusal application that the SRO studiously ignored, the SRO applied erroneous standards and failed to give due deference and effect to the record and fact findings of the IHO.

27. On this appeal, which is in the nature of a modified *de novo* review, this Court should independently review the record, giving due deference to the fact findings of the Impartial Hearing Officer. Any questions of law and mixed questions of law and fact are subject to a pure *de novo* review standard.

28. Plaintiffs have exhausted their administrative remedies.

29. The IHO's Decision was erroneous only with respect to his conclusion of law that plaintiffs had engaged in "equitable circumstances" that were sufficient to preclude or diminish any tuition reimbursement award that the IHO would otherwise have rendered for the 2006-2007 school year. In that regard, the IHO's sanction was an extreme and unwarranted result. *See* M.V. v. Shenendehowa Central School District, 2008 U.S. Dist. LEXIS 182 (N.D.N.Y. 2008).

30. The SRO's Decision is erroneous and contrary to law and statute as an "extreme" result, as well as the clear weight of the evidence and public policy, and additionally smacks of bias and retaliation.

31. The IHO Decision (in limited part) and the SRO Decision (inattentively) are contrary to law, contrary to the clear weight of the evidence and public policy, and the portions being appealed from should be reversed.

WHEREFORE, it is respectfully submitted that, after the parties submit any "additional evidence," this Court, upon its modified *de novo* review, should:

a. Reverse the IHO's Decision concerning the 2006-2007 school year claim solely as to its conclusion as to Prong III, but otherwise reinstate the IHO's decision as to the 2005-2006 and 2006-2007 school years;

b. Reverse the SRO Decision in its entirety as to both the 2005-2006 and 2006-2007 claims;

c. Order that the defendant reimburse M.R. and her parents, as previously requested, for the Windward Tuition for the 2005-2006 and 2006-2007 school years;

d. Declare M.R. and her parents to be the "substantially prevailing party" (for purposes of IDEA's fee shifting provision);

e. Grant leave to plaintiffs to submit a statutory fee application; and

f. Accord plaintiffs such other, further and different relief as may be just under the circumstances.


Dated: January 8, 2008
New York, New York

*s/ Gary S. Mayerson*
Gary S. Mayerson, Esq. (GSM 8413)
Mayerson & Associates
330 West 38th Street, Suite 600
New York, New York 10018
(212) 265-7200
(212) 265-1735 (facsimile)
www.mayerslaw.com