**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------

R.R. and D.R., o/b/o M.R.,

Plaintiffs-Appellants,

--against--

08 CV 0247 (BSJ) (FM)

SCARSDALE UNION FREE SCHOOL DISTRICT,

Defendant-Appellee.

--------------------------------------------------------------

<u>**PLAINTIFFS-APPELLANTS' MEMORANDUM OF LAW
ON MODIFIED *DE NOVO* REVIEW**</u>

Mayerson & Associates
Attorneys for Plaintiffs-Appellants
330 West 38th Street, Suite 600
New York, New York 10018
(212) 265-7200

## TABLE OF CONTENTS

TABLE OF CONTENTS………………………………………………………..i

TABLE OF AUTHORITIES…………………………………………………...ii

PRELIMINARY STATEMENT……………………………………………….....1

ARGUMENT…………………………………………………………………..9

    I.   This Court Should Reverse The SRO's Decision On Prong I and Reinstate the IHO's Decision in M.R.'s Favor on Prongs I and II ……………………………..9

        a.  Standard of Review……………………………………………………..9

        b.  The Three Part Test for Reimbursement…………………………………10

        c.  This Court Should Restore The IHO's Findings And Conclusions Of Law On Prong I Based On A Compelling Evidentiary Record And Scarsdale's Own Admission………………………………………………………….11

        d.  This Court Should Also Restore The IHO's Findings and Conclusions of Law On Prong II Based Upon The Evidence And The Less Stringent Prong II Standards………………………………………………………….14

    II.  This Court Should Rule That M.R.'s Parents' Good Faith Advocacy Conduct *During* The Hearing was *Not* "Inequitable Conduct" Warranting Even Diminishment Of The Reimbursement Award For 2006-2007............................16

        a.  M.R.'s Parents Acted in Good Faith……………………………………..18

CONCLUSION………………………………………………………………..20

## TABLE OF AUTHORITIES

**Cases**

Board of Education  of Cabell County v. Dienelt, 843 F.2d 813, 814 (4th Cir. 1988)…..18

Board of Educ. v. Rowley, 458 U.S. 176, 206 (1982)……………………………….9,11,12

Burlington Sch. Comm. v. Dept. of Educ., 736 F.2d 773(1st Cir. 1984),
        471 U.S. 359   (1985)…………………………………………………… 1,10,18

Deal v. Hamilton County Bd. of Education, 392 F.3d 840 (6th Cir. 2004),
        rehearing *en banc* denied (April 4,2005)……………………………..……….12

Doe v. Metropolitan Nashville Public Schools, 133 F.3d 384, 387 (6th Cir. 1998)……...9

Florence County School District Four v. Carter, 510 U.S. 7 (1993)……………......1,10

Frank G. v. Board of Educ. of Hyde Park, 459 F.3d (2d Cir. 2006)
        *cert. denied*, 128 S.Ct. 436 (2007). ………………………....…...10,11,12,15,17

Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 112 (2d. Cir. 2007)…………….10

Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 380 (2d Cir. 2003)…………………9

M.C. v. Central Reg. School District, 81 F.3d 389 (3d Cir. 1996)………………..…..15

M.C., *ex rel*. Mrs. C. v. Voluntown Bd. of Educ., 226 F.3d 60, 68 (2d Cir. 2000)……...10

M.S. v. Yonkers Bd. of Educ., 231 F.3d 96, 102 (2d Cir. 2000)…………………………9

M.V. v. Shenendehowa Cent. Sch. Dist., 2008 U.S. Dist.
        LEXIS 182 (N.D.N.Y. 2008)……………..………………....3,7,8,9,12,13,14,20

Mrs. B. v. Milford Board of Education, 103 F.3d 1114 (2d Cir. 1997)…………...10,12,14

D.F. *ex rel.* N.F. v. Ramapo CSD, 430 F.3d 595(2d Cir. 2005)…………………..11,15,16

Polk v. Central Susquehanna Intermediate Unit 16, 853 F.2d 171 (3d Cir. 1998)………12

Spielberg ex rel. Spielberg v. Henrico County Public Schools,
     853 F. 2d 256 (4th Cir. 1998)……………………………...…………………...…..12

T.P. and S.P., o/b/o S.P. v. Mamaroneck U. FSD, 2007 U.S. Dist.
     LEXIS 35288 (S.D.N.Y. 2007)………………………... ……………………….…12

Walczack v. Florida Union Free Sch. Dist., 142 F.3d 119, 130 (2d Cir. 1998)…………12

Warren G. v. Cumberland County Sch. Dist., 190 F.3d 80, 86 (3d Cir. 1999)…...……...18

Winkelman v. Parma City Sch. District, 127 S.Ct. 1994 (2007)………………………..13

W.G. v. Board of Trustees of Target Range School District No. 23,
     960 F.2d 1479, 1484   (9th Cir. 1992)…………...………..……………….…10,12

**Statutes**

20 U.S.C. § 1412(a)(10)(C)(iii)(III)……………………………………………………...10

20 U.S.C. § 1415(i)(2)(A)…………………………………….…………………………..9

20 U.S.C. § 1415(i)(2)(B)………………………………………………………………9

20 U.S.C. § 1415(i)(2)(c)…………………………………………...……………9

20 U.S.C. § 1415 (i)(2)(c)(iii)……………………………………………………………10

**Regulations**

34 C.F.R. § 300.512(c)………………………………………………………………....9

**New York State Education Law**

N.Y. Educ. Law § 89……………………………………………...……………2,13

**New York Regulations of the Commissioner of Education**

8 N.Y.C.R.R. § 200.1(ww)(3)…………………………………………………14

8 N.Y.C.R.R. § 200.3(a)(1)(vii)…………………………………………………...2,13

8 N.Y.C.R.R. § 200.6(a)(3)………………………………...……………………14

8 N.Y.C.R.R. § 200.6(g)(2)………………………………………………………...14

**PRELIMINARY STATEMENT**

This memorandum of law and the accompanying affidavit of Gary S. Mayerson are respectfully submitted on behalf of M.R. and her parents, R.R. and D.R., in support of their appeal from the State Review Officer's ("SRO") September 24, 2007 Decision (Exhibit A to Mayerson Affidavit) denying plaintiffs-appellants' <u>Burlington</u>/<u>Carter</u> reimbursement claims in their entirety with respect to the 2005-2006 and 2006-2007 school years.[1]

The SRO arbitrarily <u>reversed</u> and glossed over IHO Jerome Schad's 51-page decision and extensive fact-findings (Exhibit B to Mayerson Affidavit) to rule that the Scarsdale Union Free School District ("Scarsdale") had done absolutely nothing wrong with respect to Prong I in the context of the classic, three-pronged "Burlington-Carter" test for reimbursement.[2]

IHO Schad, a hearing officer with many years of experience in the field of special education law, had served for years as the head of his law firm's practice section representing *school districts* in New York State. Plaintiffs were duly concerned about IHO Schad's apparent alignment exclusively with "school district" clients, as well as because IHO Schad had been quoted in the Buffalo, New York press being critical about parents and their counsel.

After a 7 day trial and the submission of detailed, post-hearing memoranda, IHO Schad largely ruled for M.R. and her parents. IHO Schad held that, both from a procedural and substantive perspective, Scarsdale had deprived M.R. of a free and appropriate public education for both the 2005-2006 <u>and</u> 2006-2007 school years, based upon findings such as the following:

---

[1] This kind of appeal is sometimes denominated as a motion for summary judgment, because it seeks a dispositive decision from the Court. However, it is not a true summary judgment motion (involving a 3(g) statement and the like), searching for disputed issues of fact that would require a trial. Here, the instant motions seeking dispositive relief are being made *after* the completion of the trial, and after the issuance of underlying administrative decisions.

[2] Reference is made to the seminal Supreme Court authorities <u>Burlington Sch. Comm. v. Department of Education,</u> 471 U.S. 359 (1985) and <u>Florence County School District Four v. Carter,</u> 510 U.S. 7 (1993).

- The June 14, 2005 CSE meeting was improperly constituted and violated the parents' procedural rights under Article 89 of the Education Law and 8 N.Y.C.R.R. §200.3(a)(1)(vii) for failure to have a parent member present resulting in the IEP as a nullity  (IHO Decision at 25; <u>see also</u>, Tr. pp. 58-59, 263-66, 267, 1055-1056, 1074, 1101-1397);

- Scarsdale engaged in ***impermissible predetermination*** of the goals and objectives for the 2005-2006 IEP (IHO Decision at 28; <u>see also,</u> Tr. pp. 215-216, 225, 1055, 1056, 1083-84, 919, P-20, 1049-1050, 1106, 1074, 1397, 1245, 1766-1770, 1737, 1768, 837-839);

- Scarsdale's IEP expressly ***misstates*** that M.R.'s parents "expressed" their agreement with Scarsdale's IEP recommendations. (IHO Decision at 41; <u>see also</u>, Tr. pp. 1654, 1664-65).

- Scarsdale staff ***mistreated*** M.R., eroding her confidence and self-esteem. (IHO Decision at 12, 16; Tr. pp. 1042, 1045, 1117).

- Scarsdale personnel caused M.R. to ***deteriorate*** in her performance by inducing her parents to terminate outside tutoring support that M.R.'s parents were paying for privately, and which M.R. needed while she was still in the Scarsdale program. (IHO Decision at 9-11;  <u>see also</u>, Tr. pp. 1028-29);

- ***M.R. was not making overall good and meaningful progress in Scarsdale's program***, which for years involved ***Scarsdale largely regurgitating and repeating stale and otherwise inappropriate IEP goals and objectives that, for the most part, were not objectively measurable.***   Scarsdale allowed this situation to continue and failed to take appropriate remedial steps. (IHO Decision; <u>see also</u>, Tr. pp. 28-30, 35, 143-46, 154, 430, 678, 898, 953, 1581, 1678, 1663)

- There was a significant decrease in M.R.'s progress in fourth grade and by June 14, 2006, she was not an appropriate fit for Scarsdale's proposed classroom placement, mainly for failure to provide adequate classroom support (IHO Decision at 30; <u>see also</u>, Tr. pp. 794, 796, 927, 1053-54, 1397, 1555); and

- The 2005-2006 and 2006-2007 IEP goals were "fatally deficient" and deprived M.R. of FAPE (IHO Decision at 31, 37).

IHO Schad, as the trier of fact, had no choice but to assess the credibility, reliability and weight of witness testimony, as such testimony often was in sharp conflict with other testimony, even *within* Scarsdale's witness lineup. Even when it was not inconsistent and implosive, much of Scarsdale's testimony was entitled to little, if any, weight, because it was evasive or otherwise

unhelpful to the adjudication process. For example, when Dr. Mendelson, Scarsdale's head of special education, was asked questions by <u>Scarsdale's</u> counsel, he had no memory issues to speak of. However, when answering questions posed by <u>M.R.</u>'s counsel, Dr. Mendelson inexplicably and repeatedly began to experience serious short term and long term memory loss. (Tr. p. 252, ln. 14); (Tr. p. 258, ln. 14); (Tr. p. 264, ln. 23); (Tr. p. 266, ln. 8); (Tr. p. 266, ln. 9); (Tr. p. 266, ln. 12); (Tr. p. 266, ln. 24); (Tr. p. 267, ln. 2); (Tr. p. 268, ln. 3); (Tr. p. 318, ln. 11); (Tr. p. 335, ln. 24); (Tr. p. 336, ln. 18); (Tr. p. 337, ln. 16); (Tr. p. 349, ln. 4); (Tr. p. 349, ln. 15); (Tr. p. 369, ln. 16); (Tr. p. 371, ln. 15); (Tr. p. 372, ln. 13); (Tr. p. 372, ln. 22); (Tr. p. 372, ln. 23); (Tr. p. 402; ln. 14); (Tr. p. 408; ln. 12); (Tr. p. 408; ln. 24); (Tr. p. 433, ln. 18); (Tr. p. 449, ln. 1); (Tr. p. 449, ln. 3); (Tr. p. 455, ln. 14); (Tr. p. 462, ln. 2); (Tr. p. 463, ln. 6); (Tr. p. 467, ln. 13); (Tr. p. 477, ln. 18); (Tr. p. 478, ln. 18); (Tr. p. 479, ln. 16); (Tr. p. 489, ln. 11-13); (Tr. p. 505, ln. 5); (Tr. p. 505, ln. 15)**;** (Tr. p. 590, ln. 15); (Tr. p. 628, ln. 13); (Tr. p. 628, ln.15); (Tr. p. 631, ln.1); (Tr. p. 637, ln. 22); (Tr. 638, ln. 6), (Tr. 649, ln. 3), (Tr. ln. 649, ln.12), (Tr. p. 652, ln.7  ); (Tr. 655, ln.15 ); (Tr. 693, ln. 2); (Tr. 693, ln. 21); (Tr. P.694, ln. 10); (Tr. 717, ln. 22); (Tr. 718 ln. 3).[3]

As a matter of law, the SRO was required to give great deference and weight to IHO Schad's fact findings and credibility assessments, but he failed to do so, creating clear reversible error. <u>See</u>, <u>e.g.</u>, <u>M.V. v. Shenendehowa Cent. Sch. Dist.</u>, 2008 U.S. Dist. LEXIS 182 (N.D.N.Y. 2008) As the accompanying Mayerson affidavit demonstrates, the SRO compounded his failure to give appropriate deference to the IHO's fact findings by cavalierly ignoring numerous compelling ***admissions*** made by certain of Scarsdale's witnesses. These were compelling

_____

[3] The IHO thus had every reason and opportunity to make the fact findings that he made based upon his assessment of the demeanor and credibility of various Scarsdale witnesses, including but not limited to Dr. Mendelson. As a matter of law, the SRO should have, but failed to, accord the IHO the significant "deference" that the IHO's fact findings were entitled to. The SRO essentially ignored the IHO's fact findings and improperly substituted his own.

admissions that <u>supported</u> the IHO's fact findings as to Prongs I and II, and that amply established that Scarsdale had deprived M.R. of a free and appropriate public education ("FAPE") for the 2005-2006 *and* 2006-2007 school years.

Having arbitrarily reversed IHO Schad on Prong I for both school years, the SRO then decided not even to bother addressing Prongs II and III i.e. whether the Windward School was "reasonably calculated" to provide M.R. with a meaningful educational benefit ("Prong II") and whether or not there were any compelling equitable considerations that would require preclusion or diminishment of any reimbursement award that would otherwise be rendered in plaintiffs' favor.[4]  This appeal is thus entirely unlike the garden variety IDEA appeal to federal court, where the student and his or her parents have already lost before the IHO and the SRO.

Accordingly, for both the 2005-2006 and 2006-2007 school years, the IHO held that Scarsdale had deprived M.R. of a "free and appropriate public education" ("FAPE"), establishing Prong I.  For both the 2005-2006 and 2006-2007 school years, the IHO also held that the Windward School, located in White Plains and known nationally for its work teaching children with learning disabilities, was appropriate for M.R. and thus reimbursable under Prong II, in accordance with the Second Circuit's "reasonably calculated" test.

Predictably, however, and despite Scarsdale's recent relationship with the Windward School[5], and the fact that Scarsdale Schools Superintendent Michael McGill has served on the

---

[4] Last Summer, as an investigatory article appeared on the front page of <u>The Wall Street Journal</u> (Exh. C to Mayerson Aff.) challenging the integrity of the IHO, and raising significant issues as to whether the SRO is biased in favor of school districts.  While this article would be of serious concern to any parent, we do <u>not</u> ask this Court to make any findings about the SRO's impartiality or integrity.  We simply ask this Court to reverse the SRO's decision, upon the grounds that the SRO failed to give the IHO's Decision and fact findings the deference that it was owed, and additionally upon the grounds that the evidentiary record established before the IHO warrants reinstatement of the IHO's fact findings on Prongs I and II.

[5] <u>See</u>, Gilpan, Carrie, "Partnership Planned with Windward School," <u>The Scarsdale Inquirer</u>, (Friday, Oct. 19, 2007). (Exh. D to Mayerson Aff.).

Windward board[6], and despite the fact that Scarsdale's witnesses at the hearing were generally quite complimentary about the Windward School and its program, Scarsdale's legal *position* at the hearing was that it was resisting any finding that the Windward School was appropriate for M.R.

Plaintiffs won full tuition reimbursement for the 2005-2006 school year, upon the IHO's finding that plaintiffs had established Prongs I, II and III.  However, the IHO invoked Prong III "inequitable circumstances" to preclude, 100%, any reimbursement award that would otherwise have been rendered for the 2006-2007 school year.  There was absolutely no claim or finding by the IHO that M.R.'s parents had done anything wrong in the process of developing either IEP. On that issue, as shown in the Mayerson Affidavit, even Scarsdale's witnesses were uniform in their testimony that M.R.'s parents had been entirely cooperative and courteous in the IEP development process.

The evidence showed that during the 2005-2006 school year, while M.R. was in her first year attending the Windward School program, Scarsdale, with the consent of M.R.'s parents, had conducted an observation at the Windward School. (Tr. 1626). During the course of the hearing, and *after* Scarsdale had already offered M.R. an IEP for purposes of the 2006-2007 school year, Scarsdale requested yet <u>another</u> Windward visit.

There is no regulation, statutory provision, or even court decision that gives a school district the right to conduct any discovery during the course of an impartial hearing.  It is axiomatic, therefore, that if there is no right to conduct discovery during the hearing, there is no obligation or duty to provide discovery during the hearing.  Moreover, the Prong II issue of Windward's appropriateness is an evidentiary burden for M.R. and her parents to carry. Finally,

---

[6] See, *The Beacon:  The Windward School Newsletter for Professionals and Parents*, Spring/Summer '07 at 16 (Exh. E to Mayerson Aff.)

the issue of Windward's appropriateness is a *prospective* test that is based on whether the unilateral placement and program is "reasonably calculated" to provide M.R. with a meaningful educational benefit, and not whether, from the benefit of hindsight, M.R. is actually receiving that benefit.

M.R.'s parents and M.R.'s counsel did not consider it to be at all reasonable for Scarsdale to be asking for yet another Windward observation during the course of M.R.'s hearing.[7] However, if the IHO thought otherwise, plaintiffs were prepared to proceed as Scarsdale was demanding. Accordingly, as the IHO admits in his decision, plaintiffs put the issue squarely to the IHO, on the record. M.R.'s parents thus communicated to the IHO that they were *prepared* to endure another Windward observation, even during the course of the hearing, so long as that observation was "so ordered" by the IHO. (Tr. 1216:11-12—1217:1-8).

The IHO *never* directed plaintiffs to allow the second Windward observation, and he never communicated that he expected plaintiffs to comply without a directive from him. Without giving any direction on the issue whatsoever, the IHO decided Prongs I and II in M.R.'s favor for purposes of the 2006-2007 school year. However, when it came time to deciding the final prong i.e. Prong III, the IHO, noting that he was deciding an issue of first impression, decided that M.R.'s parents had acted in such a way as to give rise to an equitable circumstances *preclusion* order. The IHO even leapfrogged over the lesser available sanction, which would have involved a reduction and diminishment of the tuition reimbursement award.

There is no factual dispute as to what plaintiffs did or did not do. The Prong III issue raised by plaintiffs on their appeal is a purely legal question, i.e., whether or not plaintiffs'

---

[7] Initially, Scarsdale pretended that the purpose of the requested (second) Windward observation was to develop an IEP for the upcoming school year. However, when pressed on the issue, Scarsdale was forced to admit that it intended to use the results of this second Windward observation for the pending due process hearing i.e. its original stated reason apparently was a bad faith, pre-textual ruse.

"advocacy" during the hearing, and whether Scarsdale's conduct during the hearing properly gave rise to Prong III considerations sufficient to allow the IHO to preclude the reimbursement award he otherwise would have rendered for the 2006-2007 school year.

As shown, *infra*, it would have been error for the IHO to even *reduce* plaintiffs' reimbursement award for the 2006-2007 school year, based on a finding of "inequitable circumstances." Here, the IHO entirely precluded reimbursement for the 2006-2007 school year by imposing the ultimate sanction that the statute permits under the most egregious of circumstances involving the cooperation in the development of the IEP.

There was no parental misconduct, much less bad faith, in the IEP development process, and the record shows that plaintiffs were fully prepared to abide by any interim directive from the IHO sanctioning a further Windward observation by Scarsdale. For this reason, the IHO's decision-making on Prong III for the 2006-2007 school year was clearly erroneous, and should have been reversed by the SRO. Of course, the SRO, having blessed Scarsdale's conduct on Prong I, did not even bother to rule upon the remaining Prong II and Prong III issues. Accordingly, the Prong III issue was swept under the rug. We are hopeful that this court will enforce the law and the actual standards, and set the record straight.

Plaintiffs initiated a limited appeal from the IHO's May 3, 2007 Decision solely to challenge the IHO's erroneous conclusion of law (regarding Prong III) that there were "equitable considerations" involving the conduct of M.R.'s parents that barred and precluded plaintiffs' 2006-2007 tuition claim. Scarsdale, on the other hand, cross-appealed from everything *but* that portion of the IHO's Decision. This effectively brought up the entire case for review by the SRO.

On the parties' appeal and cross-appeal, the SRO was required to give due deference and weight to IHO Schad's *findings of fact*. <u>See</u>, <u>M.V. v. Shenendehowa Cent. Sch. Dist.</u>, 2008 U.S. Dist. LEXIS 182 (N.D.N.Y. 2008). The SRO, however, improperly disregarded and ignored the IHO's fact findings and credibility assessments, just as the SRO had done in the <u>M.V. v. Shenendehowa</u> case. The SRO unjustly and improperly stripped away *all* of the tuition reimbursement relief that the IHO had awarded to M.R. without bothering to address or decide Prongs II and III, all because of the SRO's core conclusion (ignoring the record and the compelling admissions made by Scarsdale's own witnesses), that Scarsdale had done nothing wrong.

The SRO's Decision should be reversed because it is erroneous and contrary to law and statute. The SRO's Decision should also be reversed because it failed to accord proper deference to the IHO's fact-findings, and because it also ignored the compelling <u>admissions</u> made by from Scarsdale's witnesses. Upon such reversal, this Court should modify the IHO's conclusions of law only insofar as the IHO erroneously concluded that there were "equitable circumstances" under Prong III that warranted a preclusion order as to plaintiffs' tuition claim for the 2006-2007 school year. This Court should rule that parents may properly and in good faith advocate during the hearing for their child without risking any Prong III sanction, much less the ultimate sanction. Accordingly, this Court should conclude that plaintiffs were entitled to tuition reimbursement for *both* the 2005-2006 and 2006-2007 school years.

**ARGUMENT**

**POINT I**

**THIS COURT SHOULD REVERSE THE
SRO's DECISION ON PRONG I AND
REINSTATE THE IHO's DECISION
IN M.R.'s FAVOR ON PRONGS I AND II**

<u>The Standard of Review</u>

     Pursuant to 20 U.S.C. § 1415(i)(2)(A), 34 C.F.R. § 300.512(c), in an IDEA-based action of this type, the district court: "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B).

     The district court is charged with the task of making an *independent* decision based on the preponderance of the evidence, giving "due weight" to the factual determinations made during the state administrative process. <u>Board of Educ. v. Rowley</u>, 458 U.S. 176, 206 (1982). The review process is no *pro forma*, "rubber stamp" exercise.

     Thus, reviewing district courts must not "…simply adopt the state administrative findings without an independent re-examination of the evidence." <u>Doe v. Metropolitan Nashville Public Schools</u>, 133 F.3d 384, 387 (6th Cir. 1998). Independent judicial review of an IDEIA petition is based on the preponderance of the evidence standard as to whether the evidence supports the findings and conclusions of the hearing officer. 20 U.S.C. § 1415(i)(2)(c) (2006); <u>M.V. v. Shenendehowa Cent. Sch. Dist.</u>, 2008 U.S. Dist. LEXIS 182 (N.D.N.Y. 2008); <u>see</u> <u>also</u>, <u>M.S. v. Yonkers Bd. of Educ.</u>, 231 F.3d 96, 102 (2d Cir. 2000); <u>Grim v. Rhinebeck Cent. Sch. Dist.</u>, 346 F.3d 377, 380-81 (2d Cir. 2003). Moreover, questions of law and mixed questions of law and

fact are reviewed on a purely *de novo* basis. <u>W.G. v. Board Of Trustees</u>, 960 F.2d 1479, 1484 (9th Cir. 1992).

**<u>The Three-Part Test for Reimbursement</u>**

This Court is well aware of the applicable standard for reimbursement relief. <u>Burlington</u>, 736 F.2d 773 (1st Cir. 1984); <u>Florence County School District Four v. Carter</u>, 510 U.S. 7 (1993); <u>Walczak</u>, 142 F.3d 119 (2d Cir. 1998); <u>Mrs. B. v. Milford Bd. of Educ.</u>, 103 F.3d 1114 (2d Cir. 1997); <u>Frank G. v. Bd. of Hyde Park</u>, 459 F.3d 356 (2d Cir. 2006), *cert denied*, 128 S.Ct. 436 (2007); <u>see</u> <u>also</u>, <u>Gagliardo v. Arlington Cent. Sch. Dist.</u>, 489 F.3d 105, 112 (2d. Cir. 2007). The IDEIA enables the district courts to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415 (i)(2)(c)(iii) (2006).

In determining whether parents are entitled to tuition reimbursement, the Supreme Court has established a multi-pronged test: (1) was the IEP proposed by the school district inappropriate (procedurally or substantively, or both); and (2) was the private placement appropriate to the child's needs? <u>Burlington</u>; <u>Florence County</u>; <u>Frank G.</u>, *supra*. Additionally, because the authority to grant reimbursement is discretionary, [Prong III] "equitable considerations relating to the reasonableness of the action taken by the parents are relevant in fashioning relief." <u>Burlington</u>, *supra*; <u>Frank G.</u>, *supra;* <u>M.C. *ex rel.* Mrs. C. v. Voluntown Bd. Of Educ.</u>, 226 F.3d 60, 68 (2d Cir. 2000); 20 U.S.C. Sec. 1412(a)(10)(C)(iii)(III).

In the <u>Frank G.</u> case, the Second Circuit made clear that once there has been a Prong I finding against the local educational agency (here, Scarsdale), the parent's burden to meet Prong II is less stringent, if not relaxed. The Second Circuit ruled in <u>Frank G.</u> that a Prong II placement need not be perfect, and it need not even necessarily be in the child's "least restrictive environment." Nor is there any requirement that a parent prove from the benefit of retrospective

hindsight that the child is, in fact, making progress at the unilateral placement the parent

selected. *See also* <u>D.F. *ex rel.* N.F. v. Ramapo CSD</u>, 430 F.3d 595 (2d Cir. 2005) (strongly

suggesting, even prior to <u>Frank G</u>., that the Prong II "reasonably calculated" test is *prospective* in

nature).

   Accordingly, applying the more relaxed standard that is applicable to parents where the

record has already established the Prong I hurdle, all that is required for a finding on Prong II is a

(prospective) showing that the unilateral placement was "reasonably calculated" to provide the

student with a meaningful educational benefit. <u>Frank G</u>.

   In conducting the modified *de novo* review that is required here, this Court should bear in

mind that M.R. and her parents largely won with the IHO.  If any IHO would have been expected

to rule in favor of Scarsdale, it would have been an IHO whose most recent law firm work

history apparently was being the partner in charge of his law firm's practice section representing

*school districts* in IDEA cases.  Let it suffice to say that there was an ample, if not compelling,

record below that fairly cried out for the findings that IHO Schad made on Prongs I and II. (*See*

Mayerson Aff.)

**This Court Should Restore The**
**IHO's Findings And Conclusions**
**Of Law On Prong I Based On A**
**Compelling Evidentiary Record**
<u>**And Scarsdale's Own Admissions**</u>

   The Supreme Court held as far back as <u>Board of Educ. v. Rowley</u>, 458 U.S. 176 (1982)

that the obligation to provide a FAPE invokes procedural, as well as substantive, safeguards. The

Rowley court framed the two central inquiries:  "First, has the State complied with the

procedures set forth in the Act.  And, second, is the individualized educational program

developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?"[8]

A core violation of either variant is sufficient to be the predicate giving rise to a Prong I finding against a school district. From a *procedural* perspective, a school district must not engage in "shoehorning" or in "impermissible predetermination" of the IEP—conduct that effectively precludes any genuine individualization of the student's education plan. A school district should offer what the child needs, not just what the school district conveniently may have to offer. *See, e.g.* Spielberg *ex rel.* Spielberg v. Henrico County Public Schools, 853 F.2d 256 (4th Cir. 1988)(school district impermissibly decided to change the student's placement before developing an IEP to support that change); W.G. v. Board of Trustees of Target Range School District No. 23, 960 F.2d 1479 (9th Cir. 1992)(predetermined program offered with no other alternatives discussed at IEP); Deal v. Hamilton County Bd. Of Education, 392 F.3d 840 (6th Cir. 2004), cert denied, 546 U.S. 936 (Oct. 11, 2005) (impermissible predetermination coupled with deprivation of parent's right to meaningful participation at IEP); T.P. and S.P., on behalf of S.P. v. Mamaroneck UFSD, 2007 U.S. Dist. LEXIS 35288 (S.D.N.Y. 2007) (impermissible predetermination of IEP);  Polk v. Central Susquehanna Intermediate Unit 16, 853 F.2d 171 (3d Cir. 1988).

From a substantive perspective, for an IEP to be "reasonably calculated" to provide the meaningful educational benefit that is required, it must be "likely to produce progress, not regression." Rowley, 458 U.S. at 213; Frank G., *supra*.  *See also* Mrs. B. v. Milford, *supra*.

The federal courts have previously reversed the SRO where, as here, the SRO has failed to give appropriate due deference and weight to the fact finding of the IHO.   M.V. v.

---

[8] The Second Circuit, clarifying the meaning of Rowley, has interpreted the "educational benefit" requirement to mean a *meaningful* benefit that is tailored to meet the unique needs of the student. Walczak v. Florida Union FSD, 142 F.3d 119 (2d Cir. 1988); Mrs. B. v. Milford Bd. Of Education, 103 F.3d 1114 (2d Cir. 1997).

Shenendehowa CSD, 2008 U.S. Dist. LEXIS 182 (N.D.N.Y. 2008) ("The Court is more convinced by the credibility determinations and reasoning of the IHO than those of the SRO.").

Here, the IHO correctly held, based upon a compelling record, credibility assessments and Scarsdale's own *admissions*, that there were a variety of procedural and substantive violations and FAPE deprivations sufficient to establish Prong I in favor of M.R. and her parents for the 2005-2006 and 2006-2007 school years.

As between the IHO and the SRO, just as in the M.V. v. Shenendohowa case,  only the IHO had the opportunity to assess and weigh witness demeanor and credibility, and any conflicts in the testimony given by Scarsdale's witnesses.  The SRO never attended the hearing and was in no position to assess, much less adjudicate, such issues.  Here, as documented in the accompanying Mayerson affidavit, the IHO correctly concluded that:

- The June 14, 2005 CSE meeting was improperly constituted and violated the parents' procedural rights under Article 89 of the Education Law and 8 N.Y.C.R.R. §200.3(a)(1)(vii) for failure to have a parent member present resulting in the IEP as a nullity  (IHO Decision at 25; see also, Tr. pp. 58-59, 263-66, 267, 1055-1056, 1074, 1101-1397) (see also, Winkelman v. Parma City Sch. District, 127 S.Ct. 1994 (2007) (parents have their own independent statutory entitlements under IDEA);

- Scarsdale engaged in *impermissible predetermination* of the goals and objectives for the 2005-2006 IEP (IHO Decision at 28; see also, Tr. pp. 215-216, 225, 1055, 1056, 1083-84, 919, P-20, 1049-1050, 1106, 1074, 1397, 1245, 1766-1770, 1737, 1768, 837-839);

- Scarsdale's IEP expressly *misstates* that M.R.'s parents "expressed" their agreement with Scarsdale's IEP recommendations. (IHO Decision at 41; see also, Tr. pp. 1654, 1664-65).

- Scarsdale staff *mistreated* M.R., eroding her confidence and self-esteem. (IHO Decision at 12, 16; Tr. pp. 1042, 1045, 1117).

- Scarsdale personnel caused M.R. to *deteriorate* in her performance by inducing her parents to terminate outside tutoring support that M.R.'s parents were paying for privately, and which M.R. needed while she was still in the Scarsdale program. (IHO Decision at 9-11;  see also, Tr. pp. 1028-29);

- ***M.R. was not making overall good and meaningful progress in Scarsdale's program***, which for years involved ***Scarsdale largely regurgitating and repeating stale and otherwise inappropriate IEP goals and objectives that, for the most part, were not objectively measurable.*** Scarsdale allowed this situation to continue and failed to take appropriate remedial steps. (IHO Decision; <u>see also</u>, Tr. pp. 28-30, 35, 143-46, 154, 430, 678, 898, 953, 1581, 1678, 1663)

- There was a significant decrease in M.R.'s progress in fourth grade and by June 14, 2006, she was not an appropriate fit for Scarsdale's proposed classroom placement, mainly for failure to provide adequate classroom support (IHO Decision at 30; <u>see also</u>, Tr. pp. 794, 796, 927, 1053-54, 1397, 1555<u>) see also</u>, 8 N.Y.C.R.R. § 200.6(a) (3) and (g) (2); 8 N.Y.C.R.R. § 200.1 (ww) (3); and

- The 2005-2006 and 2006-2007 IEP goals were "fatally deficient" and deprived M.R. of FAPE (IHO Decision at 31, 37).

We respectfully urge that the IHO got it right the first time on Prong I. It clearly was error for the SRO to disturb the IHO's core finding on Prong I. <u>M.V. v. Shenendehowa CSD, supra.</u> Accordingly, this Court should reinstate the IHO's findings and conclusions of law as to Prong I.

**This Court Also Should Restore The IHO's**
**Findings And Conclusions of Law On**
**Prong II Based Upon The Evidence And**
**<u>The Less Stringent Prong II Standards</u>**

It is well settled that the Prong II placement secured by a child's parents need *not* meet the same standards that a school district must meet to establish Prong I. <u>Mrs. B.</u>, 103 F3d 1114 (2d Cir. 1997). Indeed, the private Prong II placement is assessed under a far more *relaxed* standard focusing on the <u>prospective</u> issue of whether the private placement is "reasonably

calculated" to provide the student with a FAPE. Frank G., 459 F.3d 356 (2d Cir. 2006).[9] See also N.F., *supra*.[10]

We urge that the evidence adduced at the hearing shows that M.R. and her parents amply met the test for Prong II reimbursement relief, and that the IHO correctly held that the evidence amply established Windward as appropriate and reimbursable under Prong II.  Windward's reports and its active participation at M.R.'s IEP amply established Windward's  appropriateness and Prong II reimbursability, even without the numerous compliments and accolades that Windward and its program received from Scarsdale's witnesses, and even without Windward's unusual growing "ties" to the Scarsdale school district, including but not limited to the fact that the Scarsdale schools superintendent, Michael McGill, has served and continues to serve on the Windward board.

As Scarsdale's own witnesses admitted, Windward has a fine and longstanding reputation for teaching children with learning disabilities.  M.R. is a child who has properly been classified as learning disabled. M.R. thus fits the Windward student profile to a "T."

Even without a scintilla of evidence as to M.R.'s actual progress at Windward (good if not excellent progress, by all accounts), Windward clearly was "reasonably calculated" to be able to address M.R.'s learning disabilities, and provide her with a meaningful educational benefit.  Accordingly, while the SRO never took the time to reach the Prong II issue, the IHO correctly decided that issue in favor of M.R. and her parents, for both years.  Accordingly, the IHO's findings and conclusions of law on that issue should be restored.

---

[9] In Frank G., the Second Circuit made clear that the Prong II placement need not be perfect, and need not even qualify to be in the child's "least restrictive environment."  The Prong II inquiry is far more relaxed.

[10] A child's entitlement to reimbursement relief under IDEIA does not depend upon the vigilance of his or her parents, nor should it be abridged because a school district's behavior does not rise to the level of slothfulness or bad faith.  M.C. v. Central Reg. School Dist., 81 F.3d 389 (3d Cir. 1996).

**POINT II**

**THIS COURT SHOULD RULE THAT M.R.'S PARENTS'
GOOD FAITH ADVOCACY CONDUCT *DURING*
THE HEARING WAS *NOT* "INEQUITABLE CONDUCT"
WARRANTING EVEN DIMINISHMENT OF THE
REIMBURSEMENT AWARD FOR 2006-2007**

The evidence was undisputed, and Scarsdale's witnesses readily admitted, that M.R.'s parents were courteous and cooperative during the IEP development process. (*See* Mayerson Aff.)  There was not a scintilla of competent evidence to the contrary.  More to the point, the IHO did not make a single finding that plaintiffs had acted inequitably *during* the IEP development process.

The IHO ruled for plaintiffs on all three Prongs applicable to the 2005-2006 school year. However, after finding for plaintiffs on Prongs I and II for purposes of the 2006-2007 school year, the IHO held (while noting that the issue was one of first impression) that plaintiffs' conduct <u>during the hearing</u> in merely *advocating for the position* that plaintiffs should not be required to provide Scarsdale with yet another Windward observation somehow amounted to "inequitable circumstances" that would warrant *precluding*, 100%, the tuition reimbursement award the IHO apparently otherwise would have granted for the 2006-2007 school year.

The record is clear that during the prior school year, M.R.'s parents had consented to an observation of the Windward program by Scarsdale, and that Scarsdale availed itself of that observation opportunity.  Scarsdale never asked to come back. (Tr. 1624-1630) At least not during the 2005-2006 school year.

Thereafter, smack in the middle of M.R.'s impartial hearing, Scarsdale demanded yet another opportunity to observe the Windward program. M.R. and her parents clearly had the burden of proof on Prong II. Moreover, the applicable test on Prong II, as enunciated by the

16

Second Circuit, was not the retrospective test of how M.R. had been doing at Windward, but rather the *prospective* test of whether that placement and program was "reasonably calculated" to provide M.R. with an educational benefit. <u>Frank G.</u>, *supra*; <u>N.F.</u>, *supra*. The "reasonably calculated" test accordingly was a test to be measured as at the time of M.R.'s placement at Windward, not "after the fact."

Initially, Scarsdale pretended that the reason for requesting this second Windward observation was to develop a new IEP for a school year that was not even before IHO Schad for adjudication. Ultimately, when pressed to confirm that this, in fact, truly was the case, Scarsdale then admitted that it wanted to use the results from this second observation as evidence in the hearing that was pending before IHO Schad.

Plaintiffs and their counsel considered the timing of Scarsdale's demand for another Windward observation. Plaintiffs and their counsel also considered the fact that in impartial hearings being conducted in New York State, there is absolutely no statute, rule, or controlling decision allowing for discovery, pre-hearing or during the hearing.[11]

Nevertheless, while it was plaintiffs' stated position at the hearing that Scarsdale's demand for a second Windward visit (during the hearing) was itself unreasonable, plaintiffs and their counsel put the observation issue directly in front of the IHO, communicating to the IHO that if the IHO concluded that the demanded re-observation should occur, plaintiffs would then *accede* to Scarsdale's demand. (Tr. 1216:11-12—1217: 1-8) (IHO Decision at 49).

The IHO did not issue any ruling on this issue during the hearing, and he never communicated during the hearing that there would be Prong III consequences, or even a warning that there might be Prong III consequences, if plaintiffs did not do as Scarsdale was demanding.

---

[11] Even if there was an available discovery mechanism (and there is not), what in heavens did Scarsdale expect to find at Windward during a second visit that it had not found during its earlier visit—that Windward had somehow morphed into Willowbrook?

Under these circumstances, while plaintiffs obviously were pleased to receive and read the IHO's Decision as to Prongs I and II, it was disappointing and frustrating under the circumstances to see that for the 2006-2007 school year claim, the IHO invoked what is the *ultimate* Prong III sanction i.e. 100% award preclusion. We respectfully urge that the IHO erred on this limited, but important, issue.

## M.R.'s Parents Acted in Good Faith

While the Second Circuit apparently has not expressly articulated the kind of parental conduct that is required to invoke Prong III sanctions (either on a preclusion or diminishment basis), the Third and Fourth Circuits have held that a showing of *bad faith* on the part of a child's parents is required to justify a denial of reimbursement. See, Warren G. v. Cumberland County Sch. Dist., 190 F.3d 80, 86 (3d Cir. 1999) ("[A]bsent a showing of bad faith, parents taking an adversarial or uncooperative stance in advocating for their child's right to a FAPE does not justify a denial of reimbursement"); Board of Education of Cabell County v. Dienelt, 843 F.2d 813, 814 (4th Cir. 1988). We respectfully submit that plaintiffs' stated position (resisting, as unreasonable, a second Windward observation that was demanded during the hearing) was entirely in good faith, especially since plaintiffs communicated that they would (of course) act as the IHO directed, if the IHO should disagree with plaintiffs' position. Even Scarsdale's counsel fairly admitted on the record that M.R.'s parents had not done anything to delay any further observation in bad faith. (Tr. 1215).

The Prong III issue of "equitable circumstances" appears to be focused on parental conduct in the development and consideration of the school district's IEP. Burlington, *supra*. We are not aware of a single reported court decision, controlling or otherwise, holding that parental "advocacy" conduct *during* the impartial hearing and *asking* the IHO for direction can

translate to an adverse Prong III finding, much less one that strips away the entire reimbursement award that otherwise would have been rendered.

As a matter of law and public policy, it would unduly "chill" a parent's exercise of their child's due process entitlements if they must go to court in fear that at any given moment during the hearing, they must robotically comply with the school district's every demand (no matter how objectionable) or risk losing all. This is precisely why we asked IHO Schad for a ruling.  In good faith, we sought direction from the court, i.e., IHO Schad.  It was inconceivable that plaintiffs would ultimately be *punished* for doing so.

Ironically, the equitable circumstances issue first came up when Scarsdale, smack in the middle of M.R.'s hearing for the 2005-2006 and 2006-2007 school years, sought a SECOND Windward observation, claiming initially in writing that it was for purposes of an "annual review" to develop a 2007-2008 school year IEP – a school year over which the IHO did not even have jurisdiction!

When Scarsdale's bluff was called, this pretextual ruse was exposed.  Scarsdale ultimately admitted that it intended to use the results of this second observation in the context of the pending due process hearing. As noted above, there is absolutely no mechanism to conduct discovery in the middle of an impartial hearing in New York State. In reality, it was Scarsdale who was acting in bad faith by trying to get hearing discovery under the pretext of seeking information for the following year's IEP. Significantly, as noted above, even Scarsdale's counsel fairly admitted on the record that M.R.'s parents had not done anything to delay any further observation in bad faith. (Tr. 1215).

The IHO's Prong III sanction for the 2006-2007 school year was manifestly unfair and unwarranted, and not supported by any decision that was on point, much less controlling.

Although we request that this Court reinstate the IHO's Decision in every other respect, this is one aspect of the IHO's decision that requires reversal. Under the particular circumstances of this case, we are asking this Court to hold that, as a matter of law, M.R.'s parents did not act unreasonably or inequitably in challenging Scarsdale's request *during* the hearing to *again* observe the Windward program. We are asking this Court to rule that parents may engage in good faith advocacy during their child's hearing without fear of judicial reprisal, much less reprisal that comes in the form of 100% claim evaporation and preclusion.

### CONCLUSION

The record amply supports the IHO's findings and conclusions of law that Scarsdale deprived M.R. of a FAPE on Prong I and that Windward, M.R.'s private placement, is both appropriate and reimbursable for Prong II purposes.

The SRO improperly glossed over and failed to give appropriate weight and deference to the IHO's fact findings and credibility determinations. M.V. v. Shenendehowa Cent. Sch. Dist., 2008 U.S. Dist. LEXIS 182 (N.D.N.Y. 2008). The IHO, on the other hand, ruled properly in all respects, except for his erroneous legal conclusion that M.R.'s parents had engaged in "inequitable conduct" during the hearing sufficient to invoke a Prong III preclusion sanction, at 100% of plaintiffs' tuition reimbursement claim, for the 2006-2007 school year.

For all the foregoing reasons, this Court should:.

(a) reverse, as erroneous and contrary to law, the SRO's Decision in its entirety;

(b) reinstate the IHO's decision as to the 2005-2006 and 2006-2007 school years, except as to the IHO's erroneous conclusion of law regarding the ostensible application of Prong III "equitable circumstances" to preclude, in its entirety, the tuition reimbursement award that the IHO would have otherwise rendered for the 2006-2007 school year;

20

(c) declare that plaintiffs adequately met all three of the recognized prongs for tuition reimbursement relief for both the 2005-2006 and 2006-2007 school years;

(d) order that the defendant reimburse M.R. and her parents for the Windward tuition for the 2005-2006 and 2006-2007 school years;

(e) declare M.R. and her parents to be the "substantially prevailing party" (for purposes of IDEA's fee shifting provision);

(f) grant leave to plaintiffs to submit a fee application pursuant to the IDEA statute's fee-shifting provision; and

(g) grant plaintiffs such other, further and different relief as the Court may determined to be just pursuant to 20 U.S.C. Sec. 1415.

Dated: June 30, 2008
       New York, New York

                                        Gary S. Mayerson (GSM 8413)
                                        Mayerson & Associates
                                        Attorneys for Plaintiffs-Appellants
                                        330 West 38th Street, Suite 600
                                        New York, New York 10018
                                        (212) 265-7200
                                        (212) 265-1735 (facsimile)