UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
R.R. and D.R. o/b/o M.R.

        Plaintiffs,

-against-

SCARSDALE UNION FREE SCHOOL DISTRICT,

        Defendant.
------------------------------------------------------------------x

**AFFIDAVIT OF**
**STEPHANIE M. ROEBUCK**

08-CV-0247 (BSJ)(FM)–ECF Case

State of New York   )
                       ) ss:
County of Westchester)

      Stephanie M. Roebuck, being duly sworn, deposes and says:

      1.    I am a member of the firm Keane & Beane, P.C., the counsel for the Scarsdale Union Free School District (hereinafter "the District"). While my partner, Eric L. Gordon, Esq., is the designated lead attorney on the appeal to this Court, I was the attorney who handled the proceedings before both the Impartial Hearing Office (hereinafter "IHO") and the State Review Officer (hereinafter "SRO"). As such, I have knowledge of the facts sufficient to make this Affidavit on behalf of the District.

      2.    Plaintiffs brought this proceeding via a Summons and Complaint, appealing the decision of the SRO which denied their request for tuition reimbursement for the 2005-2006 and 2006-2007 school years; the SRO determined that the District had provided a free and appropriate public education to Plaintiffs' daughter, M.R., for both those school years.

      3.    The Individuals with Disabilities Education Act, 20 U.S.C. §§1400 et. seq., allows for an appeal of an SRO's determination to the appropriate Federal District Court. In this type of

proceeding, the Court is to review the administrative record developed at both the IHO and SRO stages to garner the facts needed to make its determination.

4. From a procedural standpoint, a proceeding such as this one is usually disposed of by way of a motion for Summary Judgment. As fully briefed in the Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion, the Southern District of New York has consistently applied the procedures of Summary Judgment when deciding these types of proceedings. There is one main difference between a typical Summary Judgment motion and one in the context of the Individuals with Disabilities Education Act – to the extent that there are still issues of facts in controversy after the parties have exchanged its Summary Judgment pleadings, the Court is to make a *de novo* review of the Record on Appeal and determine the matter based upon its own independent review of the Record.

5. It should be pointed out that the controversy the parties are now having is one of procedure, not substance. There is no dispute that the Court should make its own determination based upon the record below with regard to any facts in controversy, once the pleadings are fully submitted to this Court.

6. To get to that point procedurally, however, the moving parties should make a motion for Summary Judgment. As such, the Federal Rules of Civil Procedure relating to Summary Judgment are to be utilized in framing the facts. Rules 56 of the Federal Rules of Civil Procedure and the Local Rules relating to Summary Judgment motions both provide that a party making a motion for Summary Judgment shall prepare a statement of undisputed facts. Thereafter, the opposing party has the opportunity to affirm or deny such proposed statement of facts. In a motion for Summary Judgment in the IDEA context, at the end of this exchange of

pleadings, those disputed facts should be the ones the Court is to determine based upon a review of the Record below. This is the "modified *de novo* review" that Plaintiffs have been referencing.

7. There is no provision in the Federal Rules of Civil Procedure or the Local Rules of this Court for a "motion for modified *de novo* review." Plaintiffs' attorney, Gary Mayerson, is well aware that in this type of proceeding he should have submitted a Rule 56.1 Statement – his failure to do so was noted, though excused by a federal district court previously. *C.B. and R.B. o/b/o W.B. v. New York City Dep't of Educ.*, 2005 W.L. 1388964, *12, fn. 31 (E.D.N.Y. June 10, 2005).

8. The Defendant School District submitted a Rule 56.1 Statement which sets forth its statement as to the undisputed facts in this proceeding. Each of the statements in this pleading is accompanied by a reference to an exhibit or exhibits submitted in this proceeding at the administrative level, to the transcript of testimony of the hearing or to the Impartial Hearing Officer or State Review Officer's determination. There are references to an Affidavit submitted in support of the motion for Summary Judgment sworn to by Dr. Michael Mendelson, the District's Director of Special Education. Dr. Mendelson was the District's representative at the hearing and heard all testimony and read each of the pieces of evidence in this proceeding. His Affidavit is a recitation of the District's position in this matter and his Affidavit is complete with record citations providing the Court with details as to where the statements contained in his Affidavit are emanating from. There are no new arguments and no new facts presented in Dr. Mendelson's Affidavit; his Affidavit is simply a framework of the District's argument. His Affidavit as it relates to the hearing below is completely consistent with the District's Closing

Statement to the IHO and its Memorandum of Law to the SRO, both of which are included in the Record form the hearing below to be reviewed by this Court.

9. The only new information in Dr. Mendelson's Affidavit relates to assertions in Plaintiffs' Summons and Complaint which address the relationship between the District and the Windward School (hereinafter "Windward"). Plaintiffs' Complaint contains various pieces of evidence and allegations that were not presented to the IHO or the SRO, mainly references to the District's Superintendent of Schools membership on the Board of Directors of Windward. Dr. Mendelson addresses these facts in his Affidavit as they were newly presented in Plaintiffs' Complaint.

10. The District has maintained on both the IHO and SRO levels, using the same Record that is before this Court, that it provided a free and appropriate public education to Plaintiffs' daughter for the 2005-2006 and 2006-2007 school years. The court is respectfully referred to the District's Memorandum of Law in Support of the District's Motion for Summary Judgment for a full recitation of the District's arguments herein. However, by virtue of the fact that Plaintiffs' did not submit a Rule 56.1 Statement to reply to, I wish to address certain of the allegations made in various pleadings submitted by Plaintiffs to insure that the District's position as to these allegations are fully on record. Where possible, I will refer to the District's previous pleadings so as not to burden the Court with arguments already made. References to the District's Memorandum of law are to the District's Memorandum of Law on Behalf of its Motion for Summary Judgment unless otherwise specifically noted.

### *Facts Presented in the Affidavit of Gary S. Mayerson of June 30, 2008*

11. At Paragraph 3 of the Affidavit of Gary Mayerson, dated June 30, 2008 (hereinafter "Mayerson Aff.") he argues that the fact that the IHO previously represented school districts in private practice is "worthy of note". The implication of this is that should an IHO who works or worked in a capacity representing school districts rule in favor of parents at an Impartial Hearing, the parents' case must have been overwhelming to overcome the bias brought to the proceeding by the IHO's representation of school districts. In fact, Plaintiffs made a motion before the IHO at the initiation of this proceeding to have him recuse himself due to what they perceive would be his bias in favor of the District. (See Certified Record of Hearing at District Exhibit #6).[1]

12. I am of the opinion that Impartial Hearing Officers are just that, impartial. There are any number of attorneys who represent parents in due process proceedings who are also New York State certified IHO's in IDEA hearing. To assume that a person who is trained by the New York State Education Department to hear these types of hearing and who is required to maintain his or her objectivity would be bias simply due to his or her previous or current professional affiliation(s) is wrong. What is equally as wrong is to prescribe some sort of extra validation to a decision by an IHO due to his or her previous or current professional affiliation(s).

13. In Paragraph "4" of the Mayerson Aff., Plaintiff's attorney argues that Windward's reputation for educating student with learning disabilities is indicative of the fact that M.R. is being appropriately educated at the Windward School and the program at Windward is the least restrictive environment for M.R. Additionally, Mr. Mayerson highlights the District

---

[1] Hereinafter any citation to exhibits or transcripts are referring to the exhibits and transcripts of the hearing before Impartial haring Officer Jerome Schad, which is the decision in controversy herein.

Superintendent's seat on the Windward Board of Trustees for the same proposition. Whether or not Windward has a reputation for providing learning disabled students with an effective education is not the standard of Prong II; instead, Plaintiffs bear the burden of demonstrating that Windward is appropriate for M.R. specifically and that Windward is the least restrictive environment in which she can receive such a program. *M.S. v. Bd. of Educ. of the City School Distr. of the City of Yonkers,* 231 F.3d 96, 104 (2d Cir. 2000). For the reasons set forth in the District's Memorandum of Law, Plaintiffs failed to meet their burden.

14.  In Paragraph "7" of the Mayerson Aff., Plaintiffs set forth a number of grounds that the IHO ruled in their favor, each of which is addressed in the District's Memorandum of Law. However, a few of these points need to be addressed in more detail.

15.  Mr. Mayerson claims that the IHO ruled that M.R. was "mistreated" by District personnel and that her confidence was affected by same, citing pages "12" and "16" of the IHO's Decision. The IHO does not make a ruling on these points in his decision, certainly not at pages cited by Plaintiffs.

16.  In the same paragraph, Mr. Mayerson claims that the IHO ruled that M.R.'s performance in the 2004-2005 school year (a year not in controversy herein) deteriorated due to Plaintiffs' decision to terminate tutoring, a decision which Plaintiffs maintain was done at M.R.'s teacher's behest. First, the IHO makes no such determination in his decision –he simply made a finding of fact that Plaintiffs terminated tutoring after a <u>suggestion</u> by M.R.'s teacher. *See,* IHO Decision at p. "9". There was no finding that any of M.R.'s issues regarding progress in the 2004-2005 school year was the result of this suggestion.

17. In this same paragraph, Mr. Mayerson alleges the District's handling of Plaintiffs' daughter's education for the 2004-2005 school year and in years prior was, in his opinion, flawed. Therefore, Mr. Mayerson argues, the program for the 2005-2006 school year, the first of two (2) years in controversy herein, is flawed. As the Court can see from the Certified Record and the District's pleadings, the District does not dispute that M.R. did not make the progress that the District, her teachers or Plaintiffs would have expected for the 2004-2005 school year. (Mendelson Affidavit at ¶13, Parents' Exhibits "15" and "33"; Tr. 939:20 and 969:1.) In response, the District's CSE made her program more restrictive, providing a small class setting with students who were similar in profile to M.R. (District Exhibit #28). This class was to be taught using a multi-sensory approach to the curriculum. (Tr. 543:12). This is what was recommended by Dr. Allison Bell, Plaintiffs' Independent Educational Evaluator. (Parents Exhibit #23). The Court is respectfully referred to the District's Memorandum of Law for its full position on this point. What should be stressed in this Affidavit, however, is that looking at previous years is not relevant to making a determination on the year in controversy. Courts have consistently held that an IEP is a snapshot of the child at the time the IEP was developed. *D.F. ex rel N.F. v. Ramapo Cent. School Dist.*, 430 F.32 595, 599 (2d Cir. 2005) Obviously while the CSE needed information regarding the previous years to develop a program to determine M.R.'s needs based upon present levels of performance, the fact that M.R.'s progress may have slowed does not doom all subsequent recommended program as inappropriate. In this case, the Committee on Special Education, after recognizing M.R.'s struggles in 2004-2005, moved down the continuum of services set forth in 8 N.Y.C.R.R. 200.6 and created a program

that would provide M.R. with a meaningful opportunity to make progress in the least restrictive environment.

18.  In Paragraph "8" of the Mayerson Aff., Plaintiffs argue that the State Review Officer was wrong in dismissing the Plaintiffs' appeal of its petition for tuition reimbursement without making a determination with regard to Prong II and Prong III of the *Carter/Burlington* test for eligibility for tuition reimbursement. Plaintiffs have misstated the requirements of this test. Prong I of the *Burlington/Carter* test requires the fact-finder to determine whether or not the school district has provided a free and public appropriate education to the student in question. *Florence County School Dist. v. Carter*, 510 U.S. 7, 15 (1993); *Burlington School Committee v. Dept. of Educ.*, 471 U.S. 395 (1985). If the determination is made that a free and appropriate public education was offered, the inquiry stops. *W.S. ex rel. C.S. v. Rye City School Dist.* 454 F. Supp. 2d 134, 139 (S.D.N.Y. 2006). There is no requirement to proceed to Prong II, which is a determination as to whether or not the parents unilateral placement is appropriate for the student in question, or Prong III, which is to determine whether or not the equities support an award in favor of the parents. Prong II and Prong III are only reached if Prong I, the determination of whether a free and appropriate public education was offered, is found to be against the District.

19.  As the SRO determined that a free and appropriate public education was offer to M.R. in both the 2005-2006 and 2006-2007 school years, there was no reason for him to analyze whether or not the Windward program was appropriate for M.R. Additionally, the SRO did not need to reach the Prong III determination as to whether or not equitable considerations supported a finding on the part of the parent.

20. In Paragraphs "12", "21", "28", "40", "41", "42", "85" and "90" of the Mayerson Aff., Plaintiffs have pushed the argument that a gender imbalance to the recommended special class made the classroom inappropriate. Even the IHO did not countenance this argument. (IHO Dec. at p.16). While Plaintiffs' witnesses spoke to the ability of the Windward School to balance their classes along gender lines, a public school system does not have that luxury. The obligation of a public school system is to appropriately group students into an educational cohort to provide them with an education tailored to their needs. The District did that in this instance. (The District respectfully refers the Court to its Memorandum of Law for a recitation of the District's argument on this point.)

21. In Paragraph "22" of the Mayerson Aff., Mr. Mayerson highlights Dr. Bell's testimony where she expressed concerns about M.R.'s fourth grade teacher and the fact that M.R. "was not considered for a pilot program" that the fourth grade teacher "created" for another student. First, and most importantly, Dr. Bell's concerns were regarding a year not in controversy before this Court, but rather the year prior. Second, there was no pilot program offered to other students in math. (Tr. 797:8-798:22). Also, M.R.'s math skills were weakening as the year went along; there was no information available at the beginning of the 2004-2005 school year that she would need a change in how math instruction was presented to her. (Parents' Exhibit #34, p.4; Tr. 969:1).

22. In Paragraph "25" of the Mayerson Aff., Mr. Mayerson presents Kathleen Kelly's opinion as to the District's recommended program without ever pointing out that Ms. Kelly had no direct knowledge of the District's program. (Tr. 182:11-184:2). As set forth in the District's Memorandum of Law, the District's teacher who would have educated M.R. had she attended the

recommended program in 2005-2006 disputed Ms. Kelly's statements. (Tr. 1737:4; Tr. 1738:10).

23. In Paragraphs "32" and "33" of the Mayerson Aff., Mr. Mayerson argues that the District "shoe horned" M.R. into a program that was not appropriate for her. Again, District respectfully refers the Court to the District's Memorandum of Law for a full argument relating to this point. What the District needs to stress is that there was consideration given to other programs other than this special class. (District Exhibit #28). The special class, however, was deemed appropriate especially given the fact that Dr. Bell recommended just such a program for M.R. (Parents Exhibit #23).

24. In Paragraph "37" of the Mayerson Aff., Plaintiffs point to the fact that a parent member was not present at one of the CSE meetings. The District respectfully requests that the Court refer to its Memorandum of Law with regard to the argument relating to the lack of a parent member at the June 2006 CSE meeting. The District wishes to reiterate herein that a parent member was invited to that meeting, (District Exhibit #35) that the record established that the parent member that morning notified the District that she could not attend, and that the District gave the parents a choice: have the meeting now without the parent representative or reschedule the meeting. No pressure was put to bear on Plaintiffs by the District with regard to either of these choices. Plaintiffs chose to move forward.

25. In Paragraph "37" of the Mayerson's Aff., Mr. Mayerson implies that the psychologist on the Committee on Special Education was inappropriate because she had never treated M.R. The District wishes to inform the Court that a psychologist is a required member of the Committee on Special Education, whether or not the psychologist has treated or been part of

the child's educational programming. 8 N.Y.C.R.R. 200.2(a)(l)(iv). There are numerous instances where a child who has a learning disability and who was not recommended for counseling on the Individualized Educational Program, would not have any contact with a school psychologist. Regardless of the fact that counseling services may not be called for, a psychologist is still a required member. Ms. Schein was the psychologist assigned to the school which M.R. attended. Her presence was required.

26. In Paragraphs "30", "38", "60", "71" and "72" of the Mayerson Aff., Mr. Mayerson makes arguments relating to the goals on each of the IEPs in controversy herein. The District's Memorandum of Law fully details the District's position on this topic for each of the years in controversy. Herein, the District wishes to stress that the goals for each of the years in controversy were discussed with Plaintiffs and were targeted to M.R.'s unique needs.

27. In Paragraphs "45", "46", "52", "53", "58", "61", "66", and "67" of the Mayerson Aff., Plaintiffs again argue that M.R.'s fourth grade year should come into consideration in determine the appropriateness of the fifth grade year, which is in question herein. Again, as set forth above, this line of attack on the District's program fails as it is not relevant to appropriateness of determining the fifth grade recommended program's appropriateness – a program that was more restrictive than the fourth grade year and appropriate for M.R.

28. In Paragraph "54" of the Mayerson Aff., Mr. Mayerson points out that the IEP indicates that M.R. does not have any social and emotional needs to be addressed. What Mr. Mayerson does not indicate is that the CSE recommended counseling to address M.R.'s emotional issues. (District Exhibit #28).

29. In Paragraph "69" of the Mayerson Aff., Mr. Mayerson highlights testimony about a short visit M.R.'s father made to the recommended 2005-2006 program. The District presented the testimony of the teacher of this class, David Scholl. He testified that M.R. presented the same issues as the students in his class presented and that those students did not present with behavioral or emotional problems. (Tr. 1737:4, 13; 1738:6, 10).

30. In Paragraph 73 of the Mayerson Aff., Mr. Mayerson points to testimony of M.R.'s father regarding the parallel curriculum at the Scarsdale Middle School. What Mr. Mayerson fails to make clear is that M.R. was not recommended for the parallel curriculum for the 2006-2007 school year. (District Exhibit #13).

31. In Paragraph 79 of the Mayerson Aff., Mr. Mayerson points out that Lydia Soifer, one of Plaintiffs' witnesses, observes "specific children" at Windward. What Mr. Mayerson did not point out is that Dr. Soifer did not make an observation of M.R. specific to reviewing her needs and her performance at Windward. (Tr. 1235:24, 1272:18).

32. In Paragraph 81 of the Mayerson Aff., Mr. Mayerson points to testimony of Dr. Soifer about the qualifications of the teachers at Windward. What Mr. Mayerson did not point out that Dr. Soifer could not state specifically what degrees most of M.R.'s teachers held. (Tr. 1263:4-1266:4).

33. In Paragraphs 87 and 88 of the Mayerson Aff., Mr. Mayerson highlights Dr. Soifer's testimony about M.R.'s progress at Windward. What Mr. Mayerson does not point out is that Dr. Soifer had no first hand knowledge as to M.R.'s functioning or the progress she made at Windward. Dr. Soifer could not speak to the curriculum used, the textbooks she was asked to use and how she functioned in each of her classes. (Tr. 1254:2, et. seq.)

34. In Paragraph 103 of the Mayerson Aff. 6/30/08, Mr. Mayerson highlights that Dr. Stephanie Kutin-Suezon, one of the District's witnesses stated that a parallel curriculum of the 2006-2007 school year was not appropriate for M.R. What Mr. Mayerson did not point out at that the CSE <u>did not</u> recommend the parallel curriculum for M.R. for the 2006-2007 school year. (District Exhibit #13).

### *Plaintiffs' Response to District's Rule 56.1 Statement*

35. In Paragraph "7" of the Plaintiffs' Response to the District's Rule 56.1 Statement (hereinafter "Plaintiffs' Response"), Plaintiffs state that the District's witnesses testified "as to the Windward's appropriateness for purposes of Prong II of the *Burlington-Carter* test for reimbursement". That is simply untrue – at most, the District's witnesses acknowledged Windward's reputation as a school for learning disabled students. That is not the same as testifying that Windward's program was appropriate for M.R. specifically and that she needed such a restrictive program.

36. In Paragraph "88" of the Plaintiffs' Response, Plaintiffs acknowledge that the article appended to their Complaint from *The Wall Street Journal* cannot be used to establish bias on the part of the SRO. Yet, they did append it and the article was mentioned again in the Mayerson Aff. 6/30/08. The District rejects the implications of *The Wall Street Journal* article. It should be noted that in the year since this article was published, there has been no investigation or action taken against the State Review Officer by New York State or the Department of Education. And if Plaintiffs know that this article cannot be used establish bias, why append it to their Complaint? The only reason the undersigned can come to is that this was a backhanded

way of bringing the Court's attention to the alleged "bias" of the SRO without specifically putting forth any evidence.

37. This is not the first time Plaintiffs (or their attorney) they have cried "bias". As set forth more fully in District's Rule 56.1 Statement, Plaintiffs initially made a motion for the IHO to recuse himself based upon his professional affiliations with school districts when he was in private practice. He refused to do so. Now, after the IHO largely ruled in favor of Plaintiffs, they wish this Court to give extra deference to his findings due to this previous professional affiliation. As argued above, this is wholly inappropriate.

38. For the foregoing reasons, the undersigned respectfully requests that this Court deny Plaintiffs' motion for "modified *de novo* review" and grant the District's Motion for Summary Judgment in its entirety.

Dated: White Plains, New York
September 8, 2008

KEANE & BEANE, P.C.

By: _____
Stephanie M. Roebuck (SMR 6469)
Attorneys for Defendant
Scarsdale Union Free School District
445 Hamilton Avenue, 15th Floor
White Plains, New York 10601
(914) 946-4777

Sworn to before me this
8th day of September, 2008

_____
Notary Public

AILEEN T. NOONAN
Notary Public, State of New York
No. 01NO6162471
Qualified in Westchester County
Commission Expires 03/12/2011